CASANUEVA, Judge.
This appeal involves the application of a noncompete clause contained in the parties’ joint venture contract. The contract provides that it is to be governed by the laws of Tennessee, and the parties agree that the disposition of this appeal flows from the application of the Supreme Court of Tennessee’s holding in Murfreesboro Medical Clinic, P.A. v. Udom, 166 S.W.3d 674 (Tenn.2005). The trial court granted summary judgment in favor of Dr. Sreenivasa Prasad Vangara on AmSurg New Port Richey FL, Inc.’s claim for breach of a noncompete provision in the parties’ contract based on its finding that the provision was invalid and unenforceable pursuant to Murfreesboro. Because we conclude that Murfreesboro prohibits restrictive covenants that prevent a physician from practicing medicine and the noncompete clause in this case does not prevent Dr. Vangara from practicing medicine, Murfreesboro does not apply to the noncompete clause in the present case, and we reverse.
I. FACTS AND PROCEDURAL HISTORY
Dr. Vangara is a physician and was part of a business partnership that developed and operated ambulatory surgery facilities. In 2007, Dr. Vangara and his business partners entered into a joint venture with AmSurg, which ultimately resulted in the creation of the New Port Richey FL Mul-ti-Specialty ASC, LLC. As a part of this venture, AmSurg paid Dr. Vangara and his business partners in excess of $2.4 million. The parties memorialized their agreement in a written contract, and provision 8.2 of the agreement, entitled “Ownership and Investment Restrictions,” provides in pertinent part:
8.2. Ownership and Investment Restrictions. No Owner nor any Affiliate of any Owner, shall have any ... ownership interest in, or manage, lease, develop or otherwise have any financial interest in any business or entity competing or planning to compete with the LLC (including but not limited to, any ambulatory surgery center or any physician office in which surgical procedures are performed and for which facility fees or tray fees are charged)....
The foregoing shall not prohibit any Owner, nor any Affiliate of an Owner, from ... practicing medicine or performing surgical procedures at any facility.... The parties acknowledge and agree that this Section 8.2 does not require physician owners to perform surgical procedures at the Center or to refer patients to the Center, and imposes no restrictions on where such procedures are performed or where referrals are made.
Each Owner acknowledges and agrees that the enforcement of the provisions of this Section 8.2 against him or her would not prevent such person from engaging in his or her profession, the practice of medicine.
In 2010, AmSurg and Multi-Specialty ASC learned that Dr. Vangara was operating his own competing ambulatory surgery business, and they sent a series of letters to Dr. Vangara demanding that he comply with provision 8.2. When Dr. Vangara elected not to comply with AmSurg’s de *262 mand, AmSurg. filed suit against him for breach of contract and other claims.
Relying on Murfreesboro, the trial court granted Dr. Vangara’s motion for summary judgment on AmSurg’s breach of contract claim and entered judgment in favor of Dr. Vangara as to that claim. The trial court reasoned that Murfreesboro was not based upon the nature of the contract but rather upon “the public policy issues involved in a non-compete provision as applied to physicians” and that the Supreme Court of Tennessee recognized “a patient’s right to choose the physician the patient believes to be most appropriate is so fundamental” that it could not “be denied or infringed upon by a contractual provision.” We conclude that the trial court erred in applying Murfreesboro to the present case because the noncompete provision in the present case did not restrict Dr. Vangara’s ability to practice medicine.
II. ANALYSIS OF MURFREESBORO
In Murfreesboro, a medical clinic entered into a two-year employment contract with a physician, and the contract contained a noncompete clause which provided: “[ujpon any termination of this Agreement ..., the Employee agrees not to engage in the practice of medicine within a twenty-five (25) mile radius ... for a period of eighteen (18) months following” termination of his employment. 166 S.W.3d at 676 (alteration in original). Ultimately, the medical clinic elected not to renew the physician’s contract and enforced the non-compete clause, even claiming that it prohibited the physician from working at a hospital or veterans’ medical center that did not compete for patients with the medical clinic. Id. at 677.
The Supreme Court of Tennessee began by noting that covenants not to compete are generally disfavored in that state because they operate to restrain trade, and therefore, such clauses are to be strictly construed in favor of the employee. Id. at 678. The court then set forth four factors that are to be utilized in determining whether the covenant is reasonable: “(1) the consideration supporting the covenant; (2) the threatened danger to the employer in the absence of the covenant; (3) the economic hardship imposed on the employee by the covenant; and (4) whether the covenant is inimical to the public interest.” Id. This last mentioned factor led the court to consider the public policy considerations that arise in restricting the practice of medicine. A number of considerations were observed by the court: a greater number of physicians in an area tends to improve access to healthcare; increased competition for patients tends to improve quality of care and affordability; and a patient has a right to choose his or her physician and to continue that relationship, and this right could be impaired or denied should the covenant not to compete be enforced. Id. at 679.
The court also noted that the American Medical Association (AMA) strongly discourages noncompete clauses because they negatively impact health care and are not in the public interest. Such agreements “ ‘restrict competition, disrupt continuity of care, and potentially deprive the public of'medical services.’” Id. at 679 (quoting AMA Code of Medical Ethics § E-9.02 (1998)).
The last area the Murfreesboro court examined was Tennessee’s statutory provision. The court noted that while covenants not to compete between physicians are not currently prohibited, such covenants are allowed in only two circumstances: “(1) when the employer is a hospital or an affiliate of a hospital, and (2) when the employer is a ‘faculty practice plan’ associated with a medical school.” Id. at 681 (footnote omitted).
*263 After surveying these areas, the court reasoned:
Due to the important public policy considerations implicated by physicians’ covenants not to compete, along with the ethical problems raised by them, and our state legislature’s decision not to statutorily validate all such covenants, we conclude that non-compete agreements such as the one at issue in the present case are inimical to public policy and unenforceable. Public policy considerations such as the right to freedom of choice in physicians, the right to continue an on-going relationship with a physician, and the benefits derived from having an increased number of physicians practicing in any given community all outweigh the business interest of an employer.
Id. at 683-84. Based on these factors, the court held “that except for restrictions specifically provided for by statute, covenants not to compete are unenforceable against physicians.” Id. at 684.
III. MURFREESBORO’S APPLICATION TO THIS CASE
We conclude that Murfreesboro cannot be read so broadly as to invalidate the type of noncompete clause entered into by the parties here. After carefully parsing and scrutinizing the Murfreesboro opinion, there is one theme that sets forth the bases of the opinion. The melody that repeats throughout the opinion is the relationship of a physician to his or her patient. It is heard in the discussion of Tennessee’s public policy and the AMA’s ethical rules and additionally in the sphere of statutory provisions. Pursuant to Mur-freesboro, a restrictive covenant barring a physician from practicing medicine is unenforceable except in two limited circumstances.
However, the noncompete clause here does not prevent Dr. Vangara from engaging in the practice of medicine and in fact specifically states that it does “not prevent such person from engaging in his or her profession, the practice of medicine.” Rather, it prohibits him from engaging in a business venture that competes against AmSurg. Therefore, Murfreesboro is not applicable in this case. Covenants such as this one, which prohibit Dr. Vangara from having a financial interest in, managing, leasing, or developing a competing business, are lawful under Tennessee law. See Bio-Med. Applications of Tenn., Inc. v. Chary, No. W1999-01727-COA-R3-CV, 2000 WL 1634201 (Tenn.Ct.App. Oct. 13, 2000). Accordingly, we reverse the final summary judgment and remand for further proceedings.[1]
WALLACE and KHOUZAM, JJ., Concur.

. We address the issue presented in this appeal as it was preserved by the parties. Accordingly, it is unnecessary to address a theoretical concern involving a conflict of law issue as it may pertain to an equitable remedy. Whether the noncompete clause would allow for the issuance of an injunction under Florida law is not before this court.